

OCT ' 1 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **JANNA BULLOCK,** | |
| Plaintiff, | |
| vs. | Civil Action No. _1:10 cv 1197  LOG/TRJ_ |
| **BULLOCKJANNA.COM,**<br>an Internet domain name, | |
| and | |
| **BULLOCK-JANNA.COM,**<br>an Internet domain name, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Janna Bullock ("Plaintiff") alleges the following in support of her *in rem* claim

against the Internet domain names BULLOCKJANNA.COM and BULLOCK-JANNA.COM:

### NATURE OF ACTION AND RELIEF SOUGHT

1.      Plaintiff brings this *in rem* action under the Anticybersquatting Consumer

Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), against the following domain names:

BULLOCKJANNA.COM and BULLOCK-JANNA.COM (the "Infringing Domain Names").

The Infringing Domain Names contain Plaintiff's distinct trademark JANNA BULLOCK (the

"Trademark"), are confusingly similar to the Trademark, and are confusingly similar to

Plaintiff's use of her Trademark in her official website, www.jannabullock.com.  The websites

appearing at the Infringing Domain Names are not, and have never been, authorized by

Plaintiff, and, instead, are designed to appear as Plaintiff's official website but with insidious content that attacks and defames Plaintiff.

2.      As owner of the Trademark contained in the Infringing Domain Names, Plaintiff seeks the transfer of the Infringing Domain Names and/or the forfeiture or cancellation of the Infringing Domain Names as provided for in the ACPA.  15 U.S.C. § 1125(d)(2)(D)(i).

## THE PRIOR ACTION

3.      In May, 2010 Plaintiff brought an action under the ACPA against the domain names JANNA-BULLOCK.COM, JANNABULAH.COM, and JANNABULL.COM (the "Prior Sites").  This Court granted summary judgment in favor of the Plaintiff and ordered the permanent transfer of the Prior Sites to the Plaintiff.  *See Bullock v. Janna-Bullock.com*, 1:10-cv-485, ECF No. 22, (E.D. Va. July 14, 2010).  The Prior Sites hosted three websites nearly identical to the websites that are the subject of this action.  Shortly after this Court ordered the Prior Sites transferred to Plaintiff, the Infringing Domain Names were registered and now host websites with identical or virtually identical content to that found at the Prior Sites, including the same photographs of Plaintiff and her stylized signature.  Upon information and belief, the same individual or individuals responsible for the Prior Sites are responsible for the Infringing Domain Names.

## THE PARTIES

4.      Plaintiff Janna Bullock is an individual with an address c/o Janna Bullock Art Architect Design LLC, 231 W. 19th Street, #5, New York, New York 10011.

5.      The Defendant Infringing Domain Name BULLOCKJANNA.COM is registered to Alexey A. Soltunov, Oktyabrsaya, 27-5, Korolev, Moskovskaya obl, 141070, Russia.  A copy of the WhoIs record for BULLOCKJANNA.COM is attached as Exhibit A and incorporated herein by reference.  The domain name registry for BULLOCKJANNA.COM is

VeriSign Global Registry Services, 21345 Ridgetop Circle, Dulles, Virginia 20166. The

domain name registrar for BULLOCKJANNA.COM is Regional Network Information Center,

JSC dba RU-Center, 2 /1, 3d Khoroshevskaya str., Moscow, Russia.

      6.     The Defendant Infringing Domain Name BULLOCK-JANNA.COM is also

registered to Alexey A. Soltunov, Oktyabrsaya, 27-5, Korolev, Moskovskaya obl, 141070,

Russia. A copy of the WhoIs record for BULLOCK-JANNA.COM is attached as Exhibit B

and incorporated herein by reference. The domain name registry for BULLOCK-

JANNA.COM is VeriSign Global Registry Services, 21345 Ridgetop Circle, Dulles, Virginia

20166. The domain name registrar for BULLOCK-JANNA.COM is Regional Network

Information Center, JSC dba RU-Center, 2 /1, 3d Khoroshevskaya str., Moscow, Russia.

## JURISDICTION AND VENUE

      7.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§ 1125(d) and 28 U.S.C. § 1331 (federal question), §§ 1338(a) and (b) (trademarks).

      8.     The ACPA provides that an *in rem* action against domain names is proper if the

court finds that the owners of trademarks protected by the ACPA are unable to obtain *in*

*personam* jurisdiction over a person who would have been a defendant under Paragraph (1) of

the ACPA. 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Paragraph 1 of the ACPA provides as follows:

> A person shall be liable in a civil action by the owner of a mark,
> including a personal name which is protected as a mark under this
> section, if, without regard to the goods or services of the parties,
> that person--
>
> (i) has a bad faith intent to profit from that mark, including a
> personal name which is protected as a mark under this section;
> and
>
> (ii) registers, traffics in, or uses a domain name that—
>
>> (I) in the case of a mark that is distinctive at the time of
>> registration of the domain name, is identical or confusingly
>> similar to that mark;

       (II) in the case of a famous mark that is famous at the time of
          registration of the domain name, is identical or confusingly
          similar to or dilutive of that mark; or

       (III) is a trademark, word, or name protected by reason of
          section 706 of title 18, United States Code, or section
          220506 of title 36, United States Code.

15 U.S.C. § 1125(d)(1).

9.     The legislative history of the ACPA indicates that the inability to obtain *in personam* jurisdiction occurs when a non-U.S. resident cybersquats on a domain name that infringes a U.S. trademark. H.R. Rep. 106-412 at 9 (1999). Such is the case here.

10.    *In rem* jurisdiction is proper in this instance as Plaintiff is not able to obtain *in personam* jurisdiction over the registrants/owners of the Infringing Domain Names because they are located outside the United States, specifically, in Russia, and they would otherwise have been defendants in a civil action under Paragraph 1 of the ACPA, 15 U.S.C. § 1125(d)(1).

11.    The ACPA provides that, in an *in rem* action, a domain name shall be deemed to have its situs in: (a) the judicial district in which the domain name registry is located, or (b) where documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain names are deposited with the Court. 15 U.S.C. § 1125(d)(2)(C).

12.    This Court has jurisdiction of the *res* that are the subject of this Complaint – the Infringing Domain Names – because VeriSign Global Registry Services, the registry which maintains the .COM registry (*i.e.*, the registry for the Infringing Domain Names at issue here), has a principal place of business in this District at 21355 Ridgetop Circle, Dulles, Virginia 20166.

13.    Venue is proper in this Court because the registry operator for the .COM registry, VeriSign Global Registry Services, a Delaware corporation, is located at 21355 Ridgetop Circle, Dulles, Virginia 20166. As specifically provided by 15 U.S.C. § 1125(d)(2)(A): "The owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, registry, or other domain name

authority that registered or assigned the name is located." Venue is also proper in this Court under 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in this District.

## WRITTEN NOTIFICATION TO REGISTRY AND REGISTRAR

14.     Pursuant to 15 U.S.C. § 1125(d)(2)(D)(1), Plaintiff is in the process of notifying the .COM registry, VeriSign Global Registry Services, and the Registrar, Regional Network Information Center, JSC d/b/a RU-CENTER, of this proceeding by providing them with written notice and a filed, stamped copy of this Complaint. As a result thereof and pursuant to 15 U.S.C. § 1125(d)(2)(D)(1), the domain name registrar, domain name registry, or other domain name authority shall:

> (I) expeditiously deposit with the court documents sufficient to
> establish the court's control and authority regarding the disposition
> of the registration and use of the domain name to the court; and (II)
> not transfer, suspend, or otherwise modify the domain name during
> the pendency of the action, except upon order of the court.

15 U.S.C. § 1125(d)(2)(D).

## GENERAL ALLEGATIONS

### Plaintiff's Rights In The Trademark

15.     Plaintiff has common law rights in the Trademark based upon her continuous and exclusive use of the Trademark in commerce in the United States since at least 2009. The Trademark has become a distinctive identifier of services offered by Plaintiff.

16.     Since April of 2009, Plaintiff has operated an official website at www.jannabullock.com, where the public can access information about Plaintiff and Plaintiff's services, including news and magazine articles referencing Plaintiff and her services. Plaintiff has invested substantial resources in establishing the goodwill of her Trademark, including her investments in establishing her official website utilizing that Trademark.

5

17.    Plaintiff also claims common law trademark rights in the Trademark by virtue

of the fact that the Trademark is comprised of Plaintiff's name.  Plaintiff has achieved celebrity

status in New York and Russia.  Plaintiff has been interviewed by such renowned news sources

as the New York Times, and she has been featured as a speaker with such notable individuals

as the Russian Ambassador to the United States, Vitaly Churkin.  Plaintiff has received

national awards and commendations in her field of architectural design.  Plaintiff has been

involved in high-profile philanthropic endeavors, including being elected to the Board of

Trustees of The Solomon R. Guggenheim Foundation, sponsoring the Russian National

Orchestra, and hosting receptions for the Society of Memorial Sloan-Kettering Cancer Center.

Plaintiff also appeared in a 2007 documentary film about Russian elite.

18.    Plaintiff has applied to register JANNA BULLOCK as a trademark with the

U.S. Patent & Trademark Office, which application has been assigned U.S. Serial No.

85/011,085.

Infringing Activities By The Owners Of The Domain Names

19.    The ACPA lists nine nonexclusive, nonexhaustive factors that a court may

consider in determining whether a person has engaged in bad faith registration, trafficking in or

use of another's trademark:

> (I) the trademark or other intellectual property rights of the person,
> if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name
> of the person or a name that is otherwise commonly used to
> identify that person;
>
> (III) the person's prior use, if any, of the domain name in
> connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark
> in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's
> online location to a site accessible under the domain name that
> could harm the goodwill represented by the mark, either for
> commercial gain or with the intent to tarnish or disparage the mark,

6

by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of section 43.

15 U.S.C. § 1125(d)(1)(B)(i)

20.     Upon information and belief, the owner(s) of the Infringing Domain Names have shown a bad faith intent to profit from the goodwill of the Trademark by engaging in conduct described in one or more of the ACPA statutory criteria listed in Paragraph 19 above. More specifically:

a.     The Infringing Domain Names were registered on or about June 9, 2010, only two weeks after a Preliminary Injunction was issued against the Prior Sites, ordering their immediate transfer to Plaintiff.

b.     The Infringing Domain Names contain substantially the same content to that formerly hosted at the Prior Sites.

c.     The Infringing Domain Names are identical to Plaintiff's name and Trademark. BULLOCKJANNA.COM and BULLOCK-JANNA.COM merely transpose Plaintiff's first and last name and Trademark, and the Infringing Domain Names violate Plaintiff's rights in the Trademark.

   d.     The Infringing Domain Names were registered well after Plaintiff's Trademark became distinctive and an identification of source of Plaintiff's services.

   e.     Upon information and belief, the owner(s) of the Infringing Domain Names had actual knowledge of Plaintiff's rights in the Trademark and her efforts to enforce that Trademark against the Prior Sites at the time the Infringing Domain Names were registered.

   f.     The owner(s) of the Infringing Domain Names are not commonly known by either "Janna Bullock", "Bullock Janna", BULLOCKJANNA.COM or BULLOCK-JANNA.COM.

   g.     Upon information and belief, the owner(s) of the Infringing Domain Names are the same, are affiliated with, or are acting in concert with the former owners of the Prior Sites. The websites appearing at BULLOCKJANNA.COM and BULLOCK-JANNA.COM contain substantially the same or identical content as the Prior Sites. The Infringing Domain Names are both registered to an individual in Russia and use the same registrar, Regional Network Information Center, JSC dba RU-Center, and hosting service, Masterhost, as the Prior Sites. Thus, upon information and belief, the owner(s) of the Infringing Domain Names have conspired to register and/or acquire multiple domain names which they knew to be identical or confusingly similar to Plaintiff's name and Trademark, which were distinctive at the time such Infringing Domain Names were registered.

   h.     The owner(s) of the Infringing Domain Names are not making a bona fide non-commercial or fair use of the Infringing Domain Name. The owner(s) of the Infringing Domain Names have chosen domain names that correspond nearly exactly to Plaintiff's Trademark, thereby indicating that they intend to trade on Plaintiff's goodwill rather than offer any criticism, parody or protected speech. The owner(s) of the Infringing Domain Names have also chosen .COM domain names, thereby indicating that they regard the websites as commercial.

   i.     Upon information and belief, the websites at the Infringing Domain Names are intentionally designed to appear as though they are Plaintiff's official website.

However, these websites are not, and never have been, authorized by Plaintiff. The websites at the Infringing Domain Names contain unauthorized uses of Plaintiff's name, image and likeness, unauthorized photos and videos of Plaintiff (including clips from the documentary film referenced supra, in which Plaintiff appeared), and false and libelous statements about Plaintiff. Upon information and belief, the meta-tags for Respondent's website include "Janna Bullock". The websites at the Infringing Domain Names do not include disclaimers stating that these websites are not associated with Plaintiff or Plaintiff's website at www.jannabullock.com.

        j.     Upon information and belief, the owner(s) of the Infringing Domain Names registered and use the Infringing Domain Names with the intent of diverting traffic from Plaintiff's website at www.jannabullock.com to one or more of the Infringing Domain Names by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the websites at the Infringing Domain Names. Upon information and belief, Internet uses searching for "Janna Bullock" using popular Internet search engines are directed to the Infringing Domain Names, rather than Plaintiff's own website, www.jannabullock.com.

        21.     Plaintiff submits as further evidence of the Infringing Domain Name owner(s)' bad faith, their evasive behavior in response to Plaintiff's efforts to resolve this issue outside a court of law. Plaintiff first discovered the Prior Sites in the spring of 2010 and contacted the Prior Sites' owners, demanding that they remove all content from the website and transfer the Prior Sites to Plaintiff. After receiving no communication for the owners of the Prior Sites, Plaintiff filed suit under the ACPA. Upon information and belief, during the pendency of the litigation between Plaintiff and the Prior Sites, and in violation of a Preliminary Injunction issued by this Court, *Bullock*, 1:10-cv-485, ECF No. 16, individuals responsible for the Prior Sites registered the Infringing Domain Names, which contain content that is nearly identical to the content of the Prior Sites.

        22.     On September 28, 2010, Plaintiff contacted the Infringing Domain Names' owner(s) and demanded removal of all content from the website hosted at the Infringing Domain Names. A copy of this correspondence is attached hereto as Exhibit C. The owner(s)

of the Infringing Domain Names have failed to respond, to transfer the Infringing Domain Names to Plaintiff, or to remove the unauthorized and infringing material from the website.

23.    On September 28, 2010, Plaintiff also contacted the internet service provider for the Infringing Domain Names, Masterhost, – the same web hosting company that hosted the Prior Sites – demanding that it take down the infringing websites (a copy of this correspondence is attached hereto as Exhibit D), but the infringing websites have not been taken down.

24.    Upon information and belief, the owner(s) of the Infringing Domain Names are the same as, are related to, or are associated with the owners of the Prior Sites, as the contents posted to the Prior Sites and the websites at the Infringing Domain Names contain the same unauthorized and infringing material.

25.    Efforts by Plaintiff to resolve this matter directly with the Infringing Domain Name owner(s) without resorting to legal action have been unsuccessful, and experience with the Prior Sites indicates that such efforts will not be successful.

26.    Upon information and belief, the owner(s) of the Infringing Domain Names have not and cannot satisfy any of the ACPA's statutory criteria listed in Paragraph 19 above that tend to indicate an absence of bad faith intent to profit from the goodwill of the Trademark.

## CLAIM FOR RELIEF

(Violation Of Anticybersquatting Consumer Protection Act

15 U.S.C. § 1125(d))

27.    Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 26 as though fully set forth.

28.    Plaintiff's Trademark was distinctive at the time the Infringing Domain Names were registered, and was, and is, protected by the Lanham Act, 15 U.S.C. § 1125.

29.     The Infringing Domain Names are identical to and/or confusingly similar to the Trademark.

30.     The Infringing Domain Names contain the Trademark and confusingly similar simulations or transpositions thereof.

31.     The registration, trafficking in and use of the Infringing Domain Names by their owner(s) show a bad faith intent to trade on the goodwill of Plaintiff, and therefore constitutes cyberpiracy in violation of the ACPA.

32.     Upon information and belief, the owner(s) of the Infringing Domain Names are located outside of the United States, in Russia, and this Court lacks personal jurisdiction over them.

WHEREFORE, Plaintiff prays for judgment and relief as follows:

(A)     That the Infringing Domain Names be transferred to Plaintiff, or, in the alternative, cancelled and/or forfeited;

(B)     For an order, that the domain name registry VeriSign Global Registry Services, transfer the Infringing Domain Names from their current registrar, Regional Network Information Center, JSC dba RU-Center, to Network Solution who will subsequently register the Infringing Doman Names in the name of Janna Bullock; and

(C)     An award to Plaintiff of all such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**JANNA BULLOCK**


By:_____

Robert A. Angle, VSB No. 37691
robert.angle@troutmansanders.com
Robert M. Luck, III, VSB No. 78763
robert.luck@troutmansanders.com
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122 (23218-1122)
Richmond, VA  23219
Telephone:    804.697.1200
Facsimile:    804.697.1339

*Counsel to Janna Bullock*

## **VERIFICATION**

Janna Bullock, under penalty of perjury of the laws of the United States, declares as follows:

That she is the owner of the JANNA BULLOCK Trademark; that she has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within her personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that she is informed that the facts stated therein are true and correct.

Executed this 13 day of October 2010 in New York, New York.

_____
Janna Bullock

1983937v2